UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| IN RE: DONALD V. ROBINSON and SUZETTE Y. ROBINSON,  )<br>)<br>)<br>Debtors.  )<br>)<br>_____  )<br>)<br>AMERICAN GENERAL FINANCIAL  )<br>SERVICES OF ILLINOIS, INC.,  )<br>)<br>Appellant,  )<br>v.  )<br>)<br>DONALD V. ROBINSON and SUZETTE  )<br>Y. ROBINSON,  )<br>)<br>Appellees.  ) | Case No. 10-CV-2121 |

## **OPINION**

This is an appeal from an Order entered by the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 09-92131) brought pursuant to 28 U.S.C. § 158(a). Following this court's careful review, this court reverses the Order of the Bankruptcy Court.

FACTS

On July 17, 2007, Debtors, Donald V. Robinson and Suzette Y. Robinson, entered a loan agreement with Appellant, American General Financial Services of Illinois, Inc. (American General). As part of the loan agreement, American General obtained a security interest in a 1997 Toyota Avalon (1997 Avalon) owned by the Debtors. The Debtors obtained a loan of $3584.35 with an annual percentage rate of 22.39%. On December 19, 2007, this loan was "paid by renewal" and the Debtors entered into a new loan agreement on December 20, 1997. Under the December 2007 loan agreement, the Debtors financed $4037.63 with an annual percentage rate of 21.38%. The

Debtors again paid this loan "by renewal" and entered into a third loan agreement on July 18, 2008. Under the terms of the third loan agreement, the Debtors financed $4665.93 with an annual percentage rate of 26.95%. Under the terms of the July 18, 2008, agreement, the Debtors agreed to pay 37 monthly installments of $187.00 beginning August 18, 2008.

On October 9, 2009, the Debtors filed their Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code. The Debtors listed the 1997 Avalon on Schedule B of their bankruptcy petition and stated that the vehicle had a current value of $2,825.00. American General was listed as a creditor on the Debtors' Schedules for this vehicle.

On February 10, 2010, American General filed its Motion for Relief from Automatic Stay, seeking to obtain possession of the vehicle. American General stated it was the owner of a Loan Agreement and Disclosure Statement executed on the 1997 Avalon. American General stated that the Loan Agreement and Disclosure Statement were "a valid lien" on the vehicle. American General further stated that the Debtors were currently in default on the terms of the loan and owed the total amount of $3,996.04. American General sought an order terminating the automatic stay as it applied to it. American General attached a copy of the loan agreement and disclosure statement entered on July 18, 2008. American General also attached a copy of the title for the 1997 Avalon which listed American General as the lien holder.

On February 26, 2010, the Debtors filed an Objection to American General's Motion for Relief from Automatic Stay. The Debtors argued that American General's lien interfered with their exemptions. On March 3, 2010, the Debtors filed a Motion to Avoid Nonpossessory, Nonpurchase-Money Security Interest. The Debtors argued that the property was claimed as fully exempt in the bankruptcy case and the lien impaired the Debtors' exemption for "tools of the trade."

On March 18, 2010, the Bankruptcy Court conducted a hearing on the matter. American General has not provided this court with a transcript of the evidence presented at the hearing before the Bankruptcy Court. However, the parties agree that the evidence showed that Debtor Donald Robinson (Robinson) uses the 1997 Avalon in connection with his duties as a Region Merchandising Manager for W. Newell & Company. There does not seem to be any dispute that Robinson uses the vehicle mainly as transportation to and from work. However, according to the Debtors, Robinson explained at the hearing that he was required to use his vehicle to meet monthly with store managers and produce managers. These meetings were for the purpose of visiting face-to-face to ensure satisfaction with the company's products. Robinson also occasionally needs his vehicle to deliver products to stores directly or to get to and from the airport for business visits. The Debtors introduced a copy of an email dated September 14, 2008, from John R. Aune, the Vice President of National Operations at W. Newell & Company, which directs Pam Talbott, position unknown, to "[a]sk each of my direct reports to commit a minimum of one day per period to visit customers."

Following the hearing, the Bankruptcy Court ordered the parties to submit memoranda of law for the Court's review. On March 31, 2010, the Debtors submitted a Memorandum of Law in Support of Amended Motion to Avoid Nonpossessory Nonpurchase-Money Security Interest and Amended Objection to Motion for Relief from Automatic Stay. The Debtors recounted the facts regarding the three loan agreements they entered into with American General. The Debtors stated that American General delivered an application to the Secretary of State on August 14, 2007, thus perfecting the lien on the vehicle for the loan agreement created on July 17, 2007. The Debtors stated that this loan was paid on December 19, 2007, and they entered into a second and third loan agreement on December 20, 2007, and July 18, 2008. The Debtors argued that no certificate of title

3

was applied for or issued for either of these loan agreements. The Debtors argued that, under Illinois law, American General was required to file and pay the Secretary of State each time a previous contract is paid off and a new contract is formed. The Debtors therefore argued that American General does not have a valid lien on the Debtors' 1997 Avalon. The Debtors also again argued that they could claim an exemption for their 1997 Avalon under the tools of the trade exemption.

On April 7, 2010, American General filed its Response to Debtors' Memorandum of Law. American General argued that it has a security interest in the 1997 Avalon which was perfected by its lien on the vehicle in accordance with § 3-202 of the Illinois Vehicle Code. American General argued that its "properly perfected security interest in the vehicle continues to be perfected through both the December 2007 and July 2008 renewals of the original Loan Agreement and Disclosure Statement." American General further pointed out that the "Security Agreement" section of the original Loan Agreement and Disclosure Statement, and each subsequent renewal Loan Agreement and Disclosure Statement, states that the "Lender's security interest shall remain in effect until the borrower has paid in full all amounts due under the Agreement and subject to any modifications, renewals, extensions, and future advances thereof." American General also argued that the 1997 Avalon was not subject to the exemption for a tool of the trade.

On April 14, 2010, the Bankruptcy Court issued its Opinion. The Court did not make a finding regarding the perfection issue but did state that American General "claims a properly perfected security interest in the Debtors' 1997 Toyota pursuant to a loan agreement with the Debtors and its listing as a lienholder on the Certificate of Title to the subject vehicle." The Court then found that the 1997 Avalon was exempt under the tools of the trade exemption. The Court stated:

> In the instant case, the Debtors have shown that the automobile in question is not just necessary for his transportation to and from work. The automobile in question is essential to his employment. The Debtor, Donald V. Robinson, is required to supply his own vehicle to visit customers and to deliver product.

The Court further stated that it found that the vehicle in question was of modest value and its possession and use by Robinson was necessary to his continuing employment. The Court therefore found that American General's lien was avoided in its entirety pursuant to 11 U.S.C. § 522(f). The Court entered an Order on April 14, 2010, which stated that the Debtors' Motion to Avoid Nonpossessory, Nonpurchase-Money Security Interest was ALLOWED and American General's Motion for Relief from Automatic Stay was DENIED. American General filed a Notice of Appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

When a party appeals a bankruptcy court's order, the bankruptcy court's conclusions of law are reviewed under a de novo standard and its findings of fact are reviewed for clear error. Freeland v. Enodis Corp., 540 F.3d 721, 729 (7th Cir. 2008). In this case, the Bankruptcy's Court's factual findings have not been challenged, so the parties have agreed that the Court's decision must be reviewed based upon a de novo standard.

### II. AMERICAN GENERAL'S APPEAL

In its Appeal, American General has challenged the Bankruptcy Court's finding that the Debtors could avoid American General's lien on the 1997 Avalon based upon the exemption for tools of the trade. American General stated that the issue raised is whether an automobile, not

specifically or uniquely equipped to assist in the performance of a trade, can qualify for the tools of the trade exemption under Illinois law. American General argued that the tools of the trade exemption does not create an exemption for an automobile which the debtor does not regularly use in his trade, business or profession. American General argued that the exemption statute was not meant to and does not cover an automobile with no specific or unique outfittings that is not directly used in the debtor's trade.

In their Brief, the Debtors first argued that American General did not properly perfect its lien on the 1997 Avalon. The Debtors also argued that the Bankruptcy Court properly concluded that the lien on the vehicle could be avoided because Robinson is required to use his vehicle within the capacity of his employment to visit customers and to deliver produce for his employer.

American General filed a Reply Brief. American General noted that the Bankruptcy Court did not address the issue of whether American General had a properly perfected security interest in the 1997 Avalon. American General therefore argued that this issue is not on appeal. American General also argued that, based upon the applicable case law, the tools of the trade exemption does not apply to the situation here.

## A. TOOLS OF THE TRADE EXEMPTION

When a debtor files bankruptcy, the Bankruptcy Code allows the debtor to choose between state or federal exemptions "unless a state chooses to 'opt out' of the federal exemption scheme." In re Taylor, 2008 WL 1805384, at *1 (Bankr. S.D. Ill. 2008), quoting In re Chapman, 223 B.R. 137, 139 (Bankr. N.D. Ill. 1998). "Illinois has 'opted out' of the federal exemption scheme, limiting Illinois debtors to the exemptions allowed under Illinois law." In re Dowacter, 2008 WL 4615040, at *2 (Bankr. C.D. Ill. 2008); see also 735 Ill. Comp. Stat. 5/12-1201 (West 2008). Therefore,

Illinois residents who file for bankruptcy must look to Illinois law to determine property exemptions. Taylor, 2008 WL 1805382, at *1.

The Illinois personal property exemption statute allows an exemption for a debtor's tools of the trade. Taylor, 2008 WL 1805382, at *1. The statute provides, in pertinent part:

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> . . .
>
> (d) The debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor.

735 Ill. Comp. Stat. 5/12-1001(d) (West 2008). It appears that, in this case, both of the Debtors have claimed an exemption in the 1997 Avalon, so that the total exemption claimed is $3,000, which is more than the actual value of the vehicle. Therefore, the Debtors are claiming that the 1997 Avalon is entirely exempt.

This court notes that Illinois law also provides an exemption for the "debtor's interest, not to exceed $2,400 in value, in any one motor vehicle." 735 Ill. Comp. Stat. 5/12-1001(c). The items exempted under Illinois law are exempt from bankruptcy, meaning that exempt items are kept out of the hands of the trustee in bankruptcy. See In re Patterson, 825 F.2d 1140, 1141 (7th Cir. 1987); see also 11 U.S.C. § 522(d). The Debtors have pointed out that the bankruptcy trustee in this case abandoned any interest in the 1997 Avalon, stating that "there is no property available for distribution from the estate over and above that exempted by law."

The fact that the property has been kept out of the hands of the bankruptcy trustee does not affect the right of a secured lender, such as American General, to enforce its lien on the property.

See Patterson, 825 F.2d at 1141. "Illinois law governs the entitlement to the exemption but [courts] must look to bankruptcy law as to the avoidance of the lien on exempt property." In re Montano, 98 B.R. 390, 391 (Bankr. N.D. Ill. 1989). Federal bankruptcy law provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor" is entitled and the lien is "a nonpossessory, nonpurchase-money security interest" in "implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." 11 U.S.C. § 522(f)(1)(B)(ii). Section 522(f)(1) does not provide that a debtor can avoid a lien which is "a nonpossessory, nonpurchase-money security interest" in a vehicle. That is why the Debtors in this case had to try to fit their vehicle into the exemption for "tools of the trade."

"Neither Illinois law, nor the Illinois legislature, has defined 'tools of the trade.'" Taylor, 2008 WL 1805384, at *1, quoting In re Zais, 202 B.R. 263, 264 (Bankr. N.D. Ill. 1996). However, the Illinois tools of the trade exemption closely resembles the federal exemption contained in § 522(d)(6) of the Bankruptcy Code. Taylor, 2008 WL 1805384, at *1, citing 11 U.S.C. § 522(d)(6) (2006). Therefore, reference to authority provided by the Seventh Circuit is appropriate. Taylor, 2008 WL 1805384, at *1; Zais, 202 B.R. at 265.

In Patterson, the Seventh Circuit determined that "neither cows, nor tractors or other farm machinery, are tools (or implements) of the trade within the meaning of the statute." Patterson, 825 F.2d at 1145. During its lengthy and comprehensive analysis of this issue, the Seventh Circuit concluded that the "purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade." Patterson, 825 F.2d at 1146. The Court stated that, in that case, the "relevant tools of the trade are the rakes and other hand tools that Mr.

Patterson continues to own, and to use as a dairy hand following the bankruptcy." Patterson, 825 F.2d at 1147. Since the decision in Patterson, courts have noted that the Seventh Circuit has directed that the phrase "tools of the trade" is to be read narrowly. See In re Gentry, 297 B.R. 553, 554 (Bankr. C.D. Ill. 2003); see also In re Weimann, 2009 WL 383426, at *1 (Bankr. C.D. Ill. 2009); Taylor, 2008 WL 1805384, at *4.

In Montano, the debtors sought to avoid the lien on a 1979 Chevrolet Caprice automobile. The debtors argued that the automobile was a tool of the trade which they needed to keep in order to make a fresh start. Montano, 98 B.R. at 391. The bankruptcy court noted that Illinois law governed the entitlement to the exemption and that the "Seventh Circuit has established that the phrase 'tools of the trade' is to be read narrowly." Montano, 98 B.R. at 391, citing Patterson, 825 F.2d at 1146. The bankruptcy court concluded:

> In this court's opinion, a car cannot be a tool of the trade unless it is used in the trade for which it is claimed as a tool. For example, a knife sharpener would be able to claim his car equipped for that purpose as a tool of his trade. *See, Matter of Goosey*, 10 B.R. 285 (Bankr. D. Neb. 1981). The court agrees with the opinions cited above that a car which is used only for commuting, even if the Debtor has no other means to commute, cannot be a tool of the trade.

Montano, 98 B.R. at 392. The bankruptcy court therefore denied the debtors' motion to avoid the lien on the automobile. Montano, 98 B.R. at 392.

Subsequently, in In re Hively, 358 B.R. 752 (Bankr. C.D. Ill. 2007), the bankruptcy court decided the issue of whether a 2001 cargo trailer the debtors used to haul food and cooking

9

equipment for their catering business was an exempt tool of the trade. The bankruptcy court noted that, in Montano, the court "reasoned that in order for a vehicle to be a tool of the trade it must be directly used in the business and, perhaps, specially outfitted to assist in the performance of the trade or business." Hively, 358 B.R. at 753, citing Montano, 98 B.R. at 392. The court then stated:

> Considering the relevant authority and the specific facts of this case, the Court finds the cargo trailer to be a tool of the Debtors' grill service trade. The cargo trailer is specifically used to haul the Debtors' equipment to various job sites. Because the Debtors do not offer their grill service out of a fixed location, the cargo trailer is needed to transport food and equipment to the various sites where the Debtors actually operate their business. Moreover, the cargo trailer is of modest value. The $1,200 value of the cargo trailer falls easily within the $1,500 allowed by the Illinois legislature for tools of the trade. Allowing the Debtors to exempt the trailer furthers the purpose of the exemption in that it will permit the Debtors to continue in business despite their bankruptcy.

Hively, 358 B.R. at 753-54, citing Patterson, 825 F.2d at 1145-46. Similarly, in Weimann, the bankruptcy court concluded that a trailer, boats, life jackets and oars were exempt as "tools of the trade" where the debtor had used them in his business of providing rental boats for use on Lake Taylorville. Weimann, 2009 WL 383426, at *1-3.

Based upon the evidence presented, the Bankruptcy Court found that the tools of the trade exemption applied in this case, relying on Hively. American General argues that Hively is clearly

10

distinguishable from the facts here and the decision in Montano dictates that the tools of the trade exemption does not apply. Both American General and the Debtors have also cited numerous cases decided in other jurisdictions, presenting this court with a mixed bag of decisions.

This court concludes that a survey of nationwide decisions is not necessary in order to decide this case. Based upon Patterson and Montano, this court concludes that the tools of the trade exemption does not apply to the facts here. The court in Patterson stated that the "purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade." Patterson, 825 F.2d at 1146. Since the decision in Patterson, courts have concluded that the tools of the trade exemption must be construed narrowly. Accordingly, in Montano, the court concluded that a vehicle used for commuting does not fit into the exemption for tools of the trade. The court stated that "a car cannot be a tool of the trade unless it is used in the trade for which it is claimed as a tool." Montano, 98 B.R. at 392. The court in Montano used the example of a knife sharpener whose car was specially equipped for use in that trade. Montano, 98 B.R. at 392. The court in Hively recognized that the court in Montano "reasoned that in order for a vehicle to be a tool of the trade it must be directly used in the business and, perhaps, specifically outfitted to assist in the performance of the trade or business." Hively, 358 B.R. at 753, citing Montano, 98 B.R. at 392.

This case involves a situation where the Debtor, Robinson, uses the vehicle for transportation to and from work and, occasionally, to deliver product and visit customers. The vehicle is not specially equipped, and this court agrees with American General that the facts here show that Robinson merely uses the vehicle as a means of conveyance from one place to another and not as a "tool of the trade." This case is not like the situation in Hively or Weimann where the use of the

11

trailer was limited to transporting items necessary for the business. Here, the vehicle is used primarily for commuting to and from work and cannot be considered a tool of the trade. See Montano, 98 B.R. at 392.

## B. VALID SECURITY INTEREST

The Debtors have also argued that American General should not be able to enforce its lien because the lien was not properly perfected. In response, American General argued that the Bankruptcy Court did not address this issue so it is not an issue on appeal. This court disagrees. "[I]t is of course fundamental that a reviewing court may affirm on any ground supported by the record, even if the court below has not chosen that particular route." Farley, Inc. v. Chiappetta, 163 B.R. 999, 1007 n.19 (N.D. Ill. 1994); see also In re United Homes of Mich., Inc., 2002 WL 126518, at *2 (N.D. Ill. 2002). Therefore, because this court could affirm the Bankruptcy Court's ruling on this basis, this court will consider the issue.

Unfortunately for the Debtors, however, this court concludes that the applicable law supports a conclusion that American General's lien was properly perfected and may be enforced. There is no dispute in this case that American General obtained a security interest in the vehicle and is listed as the lien holder on the title to the vehicle. The Debtors have argued that their original loan agreement was "paid" and they subsequently entered into two new loan agreements. Therefore, they contend, American General was required to file an application for title with the Illinois Secretary of State two more times after it originally obtained a perfected security interest in the vehicle based upon the first agreement. This court does not agree.

First of all, this court does not agree that the Debtors' first loan with American General was "paid." In fact, the amount owed was simply rolled over into the second loan, and the amount still

owed on the second loan was later rolled over into the third loan. The first and second loans were therefore marked as "paid by renewal" and all three loan agreements provided that American General had a security interest in the 1997 Avalon. Throughout these transactions, American General was listed as the lien holder on the title for the 1997 Avalon.

Therefore, because American General had a valid security interest in the 1997 Avalon and its lien was noted on the title, it had a perfected security interest. See In re Lortz, 344 B.R. 579, 583 (Bankr. C.D. Ill. 2006). The perfection of a titled vehicle is governed by the Illinois Vehicle Code. In re My Type, Inc., 407 B.R. 329, 331 (Bankr. C.D. Ill. 2009). In this case, because the loan agreements were not "paid" but were rolled over into new agreements, this court concludes that American General complied with the applicable provision of the Illinois Vehicle Code. See 625 Ill. Comp. Stat. 5/3-202(a) and (b); see also My Type, Inc., 407 B.R. at 331-32. The security interest was perfected within 30 days after the "creation" of the security interest, which was when the parties entered into the first loan agreement. See 625 Ill. Comp. Stat. 5/3-202(b). The security interest was continued when the second and third loan agreements were entered and the lien remained perfected.

Moreover, under the Illinois Vehicle Code, "a certificate of title issued by the Secretary of State is *prima facie* evidence of the facts appearing on it." Lortz, 344 B.R. at 584. "The purpose of this provision is to provide the public with a readily available means of identifying the owners and lienholders of the vehicle and parties dealing with the vehicle are entitled to rely upon the information that appears on the face of the certificate of title." Lortz, 344 B.R. at 584. Here, there is no dispute that American General's lien appeared on the title to the 1997 Avalon. In addition, the Seventh Circuit Court of Appeals has noted that the Illinois Vehicle Code "should be construed as primarily a constructive notice statute, to protect a lienor who has substantially complied with its

provisions in his attempt to perfect his lien." Matter of German, 285 F.2d 740, 742 (7th Cir. 1961). In this case, American General did not only substantially comply, it complied with the perfection provisions.

Finally, in any case, this court notes that a "security agreement is enforceable against a debtor even if the security interest is not perfected." Lortz, 344 B.R. at 583. Perfection is only significant with respect to the creditor's rights regarding third parties. Lortz, 344 B.R. at 583. Therefore, because there is no dispute that American General has an enforceable security interest in the 1997 Avalon, the Debtors cannot even legitimately raise the issue of perfection.

IT IS THEREFORE ORDERED THAT:

(1) The Order of the Bankruptcy Court entered on April 14, 2010, is REVERSED. This case is remanded to the Bankruptcy Court for proceedings consistent with this Opinion.

(2) This case is terminated in the district court.

ENTERED this __14th__ day of October, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE